## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION
LAWYERS ASSOCIATION
1331 G Street NW, Suite 200
Washington, DC 20005; and

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE
OFFICE OF INFORMATION POLICY,

*Defendants*.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552

*et seq.*, seeking to compel the Office of Information Policy ("OIP"), under the U.S. Department

of Justice ("DOJ") to immediately release records relating to hiring procedures for appellate

immigration judges ("AIJs") and Board of Immigration Appeals ("BIA") Members. Plaintiff

filed its FOIA request in October of 2019. Despite Plaintiff's repeated inquiries, OIP has failed

to provide a determination or responsive documents as required by statute. 5 U.S.C. §

552(a)(6)(A)(i); *see also* 28 C.F.R. § 16.4(f). Plaintiff now invokes its right to judicial review

under 5 U.S.C. § 552(a)(4)(B) and asks this Court to order that Defendant comply with its

obligations under the FOIA statute.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

1331.

3.      This Court has jurisdiction to grant declaratory and further proper relief pursuant to 28 U.S.C. §§ 2201-2202 and the Federal Rules of Civil Procedure 57 and 65.

4.      Venue lies in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff has its principal place of business within this district.

## PARTIES

5.      Plaintiff American Immigration Lawyers Association ("AILA") is a nonpartisan, tax-exempt, not-for-profit organization under Section 501(c)(6) of the Internal Revenue Code. AILA is a national association of immigration lawyers established in 1946 to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of its members. Its central goals are to increase member participation in advocacy before Congress, the judiciary, federal agencies, and the media, for immigration-related interests of its clients and society and to increase the level of knowledge and professionalism, and foster the professional responsibility, of its members. To further these twin goals, AILA provides its members and the public with continuing legal education, information, and resources, primarily through its website, www.aila.org. AILA updates its website daily with the latest immigration news and information, including agency policy guidance, policy interpretations, and policy memoranda.

6.      Defendant Office of Information Policy ("OIP") is a sub-agency of the U.S. Department of Justice and an agency within the meaning of 5 U.S.C. § 552(f). OIP is tasked with overseeing DOJ compliance with the FOIA, as well as managing DOJ's obligations under the statute.

7.      Defendant has custody and control over the records that Plaintiff seeks.

## STATEMENT OF FACTS

*Background for Request*

8.      The Board of Immigration Appeals ("BIA"), an agency under the Executive

Office for Immigration Review ("EOIR"), also housed under the Department of Justice, serves as

a crucial actor in the immigration court system. Among other functions, it decides appeals of

deportation orders. *See* 8 C.F.R. § 1003.1(b).  In this role, the BIA can designate precedent,

impacting thousands of noncitizens defending against deportation every year. 8 C.F.R. §

1003.1(d)(1).

9.      Historically, individuals who decide BIA appeals are referred to as "Board

Members." In August of 2019, DOJ issued an interim rule impacting the organizational structure

and roles within EOIR, including the BIA. *See* 84 Fed. Reg. 44537 (August 26, 2019). Among

the initiatives promulgated by the rule, DOJ announced that BIA Members would now also be

known as "Appellate Immigration Judges" ("AIJs"). *Id*. at 44539; *see also* 8 C.F.R. §

1003.1(a)(1). The rule does not clarify when a judge will act as a BIA Member or an AIJ.

10.      According to a July 18, 2019 memorandum from EOIR Director, James R.

McHenry III for the Attorney General, released via a prior FOIA request, DOJ established new

hiring procedures for AIJs on March 8, 2019. *See* Ex. A, Memorandum from James R. McHenry III,

Director for Executive Office of Immigration Review (EOIR) to Attorney General William Barr,

"Candidate for Appellate Immigration Judge Position," July 18, 2019 ("McHenry Memorandum").[1]

While these hiring procedures pre-date DOJ's regulation officially introducing AIJs, on

---

[1] The memorandum was obtained through a FOIA request filed by Muckrock, a nonprofit collaborative news site furthering government transparency. *See* MuckRock, *About Muckrock*, https://www.muckrock.com/about/; *see also* Tanvi Misra, "DOJ Changed Hiring to Promote Restrictive Immigration Judges," ROLL CALL, October 29, 2019, https://www.rollcall.com/2019/10/29/doj-changed-hiring-to-promote-restrictive-immigration-judges/ ("Misra Roll Call Article").

information and belief, the procedures constitute the current procedures for hiring AIJs as well as Board Members.

11.     There is growing public concern over DOJ hiring practices for AIJs and Board Members under the present administration, which has instituted various measures to restrict or deny protection to asylum-seekers as well as a full and lawful path to permanent resident status or citizenship for countless others. The concerns revolve around hiring practices that seem to skew in favor of essentially promoting candidates whose track records indicate the potential to stray from impartial adjudication in furtherance of the administration's goals. These include the hiring of judges with a record of disproportionately denying immigrants' cases at the trial level, receiving a higher number of remands from the BIA, and the subject of complaints.

12.     Members of the U.S. Congress have repeatedly called for inquiries into these troubling practices, highlighting their concern regarding the threat to the impartiality of the immigration court system.[2] These concerns have been echoed by the American Bar Association (ABA) and the media.[3]

---

[2] Letter from United States Senators to Attorney General William Barr, February 13, 2020, https://www.whitehouse.senate.gov/imo/media/doc/2020-02-13%20Ltr%20to%20AJ%20Barr%20re%20independence%20of%20immigration%20courts%20(004).pdf ; Letter from United States Senators to U.S. Department of Justice Inspector General Michael Horwitz, May 8, 2018, https://www788842A2BF3791F0585EBACFD50A.dems-to-horowitz.pdf; Letter from United States Senators to Attorney General Jeff Sessions, April 17, 2018, https://www.leahy.senate.gov/imo/media/doc/4.17.18%20Bicameral%20Judiciary%20Letter%20to%20DOJ.pdf.

[3] *See* American Bar Association, 2019 Update Report, "Reforming the Immigration System: Proposals to Promote Independence, Fairness, Efficiency, and Professionalism in the Adjudication of Removal Cases," March 2019, https://www.americanbar.org/content/dam/aba/publications/commission_on_immigration/2019_reforming_the_immigration_system_volume_2.pdf; *see also* Misra, *supra* n. 1, ("Misra Roll Call Article"); Priscilla Alvarez, "Jeff Sessions Is Quietly Transforming the Nation's Immigration Courts," THE NATION, October 17, 2018, https://www.theatlantic.com/politics/archive/2018/10/jeff-sessions-carrying-out-trumps-immigration-agenda/573151/.

13.     The fairness of the immigration court system relies on the impartial adjudication of cases. If that neutrality is compromised, it undermines public confidence in the courts and weakens the due process protections guaranteed to individuals who face deportation proceedings. 8 C.F.R. § 1003.1(d)(1) ("The Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations.").

***AILA's FOIA Request***

14.     On October 15, 2019, Plaintiff filed a request with EOIR seeking records related to "hiring procedures for appellate immigration judge (AIJ) positions and Board Member positions established on March 8, 2019…". *See* Ex. B, AILA Freedom of Information Act Request (FOIA) to EOIR, October 15, 2019 ("AILA EOIR FOIA"). The request referenced the hiring procedures in the July 18, 2019 memorandum issued by Director McHenry. *Id*.; *see also* Ex. A.

15.     On October 15, 2019, EOIR confirmed receipt of Plaintiff's request and assigned it control number 2020-1815.

16.     On November 14, 2019, Plaintiff inquired about the status of the request with EOIR by email. EOIR replied that the request was being processed.

17.     On November 15, 2019, EOIR notified Plaintiff by email that it located and processed records responsive to Plaintiff's request but that other DOJ components had an "equity interest" in the records. EOIR notified Plaintiff that the records were with Defendant DOJ's Office of Information Policy ("OIP"). EOIR stated that it did not have information regarding OIP's FOIA queue but would inquire with OIP and inform Plaintiff of any information it could ascertain.

18.     On November 18, 2019, EOIR notified Plaintiff by email that Defendant OIP continued to consult with other DOJ components and anticipated a recommendation by the end of the week. EOIR informed Plaintiff that this recommendation would then require approval.

19.     On November 27, 2019, Plaintiff received written correspondence from EOIR officially confirming that it had referred the responsive records in its possession to Defendant OIP to process the request and respond directly to Plaintiff. *See* Ex. C.

20.     After EOIR referred Plaintiff to Defendant OIP, Plaintiff inquired several times about the status of its request with Defendant OIP over a period of approximately two months. On each occasion, Defendant OIP indicated to Plaintiff that it would issue a response in two to three weeks.

21.     Plaintiff inquired about the status of the request with Defendant OIP by phone on December 3, 2019, seeking to confirm its acknowledgment of EOIR's referral. Defendant OIP informed Plaintiff at that time that it had not yet entered the referral by EOIR into its system and that once the referral was received, it would be assigned an OIP FOIA tracking number.

22.     On December 6, 2019, Plaintiff again attempted to reach Defendant OIP by phone, leaving a voicemail message.

23.     On December 11, 2019, Plaintiff again called Defendant OIP and spoke to OIP's Chief Initial Request Staff, Scott Hibbard. Mr. Hibbard informed Plaintiff that the referral had not yet been received but that he would inquire with OIP's mailroom.

24.     That same day, December 11, 2019, Plaintiff called the EOIR FOIA contact person, Shirley O'Hara, to confirm that EOIR had referred responsive records to OIP and ascertain whether EOIR had further information.

25.     On December 11, 2019, Defendant OIP informed Plaintiff by letter that EOIR had located records responsive to Plaintiff's request and had referred those records to Defendant OIP for processing and a direct response to Plaintiff. *See* Ex. D. Defendant OIP informed Plaintiff that it would invoke the consultation mechanism under FOIA, given that the materials were "of

interest" to other components or agencies. *Id.* (citing 28 C.F.R. § 16.4(d)(1)). Defendant OIP did not identify which components or agencies would be consulted.

26.     On December 27, 2019, Plaintiff called Mr. Hibbard at OIP to inquire about the status of the request. At that time, Mr. Hibbard transferred Plaintiff's call to Valeree Villanueva, the OIP FOIA public liaison. Ms. Villanueva did not answer, and Plaintiff left a voicemail.

27.     Having received no response, Plaintiff called Mr. Hibbard at OIP again on January 6, 2020. Mr. Hibbard again transferred Plaintiff's call to Valeree Villanueva. Ms. Villanueva did not answer, and Plaintiff left a voicemail.

28.     On January 7, 2020, Ms. Villanueva contacted Plaintiff by phone. Plaintiff was unavailable and Ms. Villanueva left a voicemail asking Plaintiff to call back.

29.     Plaintiff returned Ms. Villanueva's call the same day. Ms. Villanueva provided Plaintiff with the information that OIP had previously given - that EOIR located potentially responsive records but because these records contained information that other offices "had equity in the material being disseminated," the responsive records were referred over to DOJ OIP for review and response. Ms. Villanueva then referred Plaintiff to the DOJ OIP Analyst reviewing the documents, Amanda Toner. Ms. Villanueva estimated a response within two to three weeks.

30.     On January 13, 2020, Plaintiff called Ms. Toner to inquire about the status of Plaintiff's FOIA request. Ms. Toner informed Plaintiff that the documents had been dispersed for consultation. Ms. Toner again estimated that records would be identified for release within approximately two weeks.

31.     On January 22, 2020, Plaintiff called Ms. Toner regarding the status of Plaintiff's FOIA request. Ms. Toner informed Plaintiff that the agency was still engaged in the consultation

process with at least two agencies, whose identity Ms. Toner could not disclose. Ms. Toner informed Plaintiff that she would inquire with the consulted agencies.

32.     Plaintiff called Ms. Toner on January 30, 2020. Ms. Toner did not answer, and Plaintiff left a voicemail.

33.     On January 31, 2020, Plaintiff received an email from Ms. Toner confirming that she had received Plaintiff's voicemail and informing Plaintiff that she anticipated that a response would be forthcoming within two to three weeks.

34.     Plaintiff emailed Ms. Toner on February 6, 2020, inquiring about the status of the request and asking for confirmation that a response would be made by February 14, 2020, two weeks from Ms. Toner's last communication.

35.     Plaintiff again inquired by phone on February 11, 2020, with another attempt to confirm that Defendant OIP was on track to respond by their original target date of February 14, 2020. Ms. Toner responded by email on February 12, 2020 confirming that she had received Plaintiff's voice mail and indicating that due to the pending consultations, a response would be forthcoming within two to three weeks.

36.     Plaintiff has heard nothing further from Defendant OIP nor received responsive records.

37.     Under DOJ FOIA regulations, Defendant OIP was required to respond to Plaintiff's FOIA request "according to the date that the FOIA request initially was received by the first component or agency." See 28 C.F.R. § 16.4(f).

38.     To date, Defendant OIP has failed to produce records in response to Plaintiff's October 15, 2019 Request.

39.     Defendant has violated the applicable statutory time limit for processing of FOIA requests. 5 U.S.C. § 552(a)(6)(A) and (B).

40.     Defendant has unlawfully withheld responsive records.

41.     Because Defendant has failed to respond to Plaintiffs' request within the applicable statutory period, any administrative remedies are deemed exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552:**
**Failure to Disclose Responsive Records**

42.     Plaintiff incorporates each and every allegation contained in the preceding paragraphs.

43.     Defendant is obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to Plaintiff's FOIA Request.

44.     Defendant's failure to disclose all responsive records violates 5 U.S.C. § 552(a)(3).

### SECOND CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552:**
**Failure to Respond within Time Required**

45.     Plaintiff incorporates each and every allegation contained in the preceding paragraphs.

46.     FOIA requires agencies to make determinations regarding responsive records within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i). In certain circumstances, agencies may invoke an extension of ten working days under 5 U.S.C. § 552(a)(6)(B).

47.     EOIR referred Plaintiff's request to Defendant OIP pursuant to 28 C.F.R. § 16.4(f).

Under this regulation, Defendant OIP was obligated to process the records "according to the date

that the FOIA request initially was received by the first component or agency."

48.     Defendant OIP did not invoke additional time under the statute.

49.     Defendant OIP has now exceeded the maximum statutory time for making a

determination on records responsive to Plaintiff's request.

50.     Defendant's failure to make a determination within the statutory timeframe violates

5 U.S.C. §§ 552(a)(6)(A)(i).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant, and that the

Court:

a.     Order Defendant to expeditiously disclose all responsive, non-exempt records and

enjoin Defendant from improperly withholding records.

b.     Declare that Defendants' failure to promptly produce records responsive to

Plaintiff's Request violates FOIA, 5 U.S.C. § 552(a)(3) and (a)(6)(A)(i) and

c.     Award Plaintiff reasonable attorneys' fees and other litigation costs pursuant to

5 U.S.C. § 552(a)(4)(E) and any other applicable statute or regulation; and

d.     Grant such other relief as the Court may deem just, equitable, and appropriate.

Respectfully submitted,

Dated: March 17, 2020

/s/Claudia Valenzuela
Claudia Valenzuela
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540

cvalenzuela@immcouncil.org

*Counsel for Plaintiff*